Filed 7/13/22  P. v. Castillo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C092703 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCR201815799) |
| v. | |
| FRANCISCO CASTILLO, | |
| Defendant and Appellant. | |

SUMMARY OF THE APPEAL

A jury found defendant Francisco Castillo guilty of the assault of Carlos, Jr. with a firearm, in violation of Penal Code section 245, subdivision (a)(2).  To prevent confusion, in this decision, because Carlos, Sr. was a witness in this case, we refer to the victim as Carlos, Jr. and to his father as Carlos, Sr.

On appeal, defendant argues that the trial court committed reversable error when it allowed the prosecutor to present evidence under Evidence Code section 1101, subdivision (b), that defendant had committed a prior uncharged offense of assault with a

1

firearm.  In the alternative, defendant argues that even if the trial court did not commit reversable error when it allowed the evidence of a prior uncharged offense, the judgment must be reversed because the trial court did not allow defendant to present evidence that a prosecutor dismissed assault charges stemming from the prior uncharged crime when defendant pleaded to a lesser crime.  We disagree with both arguments.  Accordingly, we affirm the judgement.

FACTS AND HISTORY OF THE PROCEEDINGS

The Assault of Carlos, Jr.

Carlos, Sr. owns a battery, alternator, and starter business.  Carlos, Jr. is his son. At trial Carlos, Sr. testified that Carlos, Jr. had, in the past, gotten into physical fights with him and punched him numerous times.  Carlos, Sr. testified that Carlos, Jr. would punch Carlos, Sr. when Carlos, Sr. told Carlos, Jr. to stop doing drugs.  Carlos, Sr. believes Carlos, Jr. was using cocaine in 2018.  Carlos, Sr. said Carlos, Jr. yells at people when he is angry, and that Carlos, Jr. tries to intimidate people, and will threaten to beat them up.  Carlos, Sr. said that he, in fact, has seen Carlos, Jr. beat up many people.

Carlos, Sr. has known defendant for about 10 years and considers him a friend. Defendant had worked for Carlos, Sr. on and off for three years at the time of trial. Carlos, Sr. described defendant as someone who does not have a temper and as someone who does not get upset but laughs and says thank you.

On December 22, 2018, Carlos, Jr. had possession of a tow truck that he was not supposed to keep at Carlos, Sr.'s business.  Defendant was working at the business that morning.  Despite his father's prohibition on parking the truck at the business, Carlos, Jr. had done so.

Video surveillance of the business taken at approximately 9:20 a.m. on December 22, 2018, captures what happened next between defendant and Carlos, Jr. near the truck.  In two videos, one sees defendant walking around and fiddling with the tow

2

truck. Carlos, Sr. believed defendant was probably trying to move the truck so he could get work done. Carlos, Jr. jumped out of the truck, appears to have slapped defendant and then continued to yell at defendant and angrily wave his arms around. Defendant turned around and started walking away. For a few seconds, Carlos, Jr. remained yelling near the truck as defendant was walking. Then Carlos, Jr. appeared to walk a few steps in the direction of the defendant who was still walking away. Defendant then turned around and fired a gun towards the ground in Carlos, Jr.'s direction. The bullet ricocheted off the ground and hit Carlos, Jr. in the arm. Defendant then turned around and continued to walk away. Defendant later told a deputy sheriff defendant got in his car and drove away after the shooting. When he saw the video, Carlos, Sr. believed Carlos, Jr. was "having a temper" during the incident.

After the shooting, defendant called Carlos, Sr., and defendant told Carlos, Sr. that defendant and Carlos, Jr. had gotten into a fight and defendant had accidentally shot Carlos, Jr. in the arm.

Shortly after the shooting, Deputy Sheriff Zack Russell answered a call regarding the shooting. He found Carlos, Jr. trying to use a bandana to make a tourniquet near a wound on his arm. Carlos, Jr. was uncooperative and would not answer any questions about who shot him. Carlos, Jr. met with medical technicians and was taken to the hospital. An x-ray taken at the hospital showed a foreign body in Carlos, Jr.'s arm that was probably a bullet. The hospital cleaned Carlos, Jr.'s wound, wrapped the wound with gauze, and let him go home. The hospital did not remove the bullet. The doctor who treated him does not recall prescribing any pain medications.

Deputy Russell arrested defendant the next day after a traffic stop of defendant. He placed defendant in a patrol car, read him his *Miranda* rights, and asked him where the gun was. Defendant said he threw the gun into the delta. According to Deputy Russell, defendant said he had been carrying a gun for protection because there were people out to get him.

3

According to the report Deputy Russell made regarding his investigation of the shooting, at the time of the shooting, Carlos, Jr. was 5'11" and 28 years old, and defendant was 5'8" and 55 years old. Defendant told Deputy Russell he had shot at Carlos, Jr. and hit him by accident, and that he had shot at Carlos, Jr. to scare him off. Defendant reported to Deputy Russell that Carlos, Jr. had told defendant he was going to " 'beat [his] ass.' "

Motions in Limine Regarding 2016 Incident

As part of their motions in limine, the People asked to admit evidence of an uncharged incident on July 1, 2016, in which Richard S. was standing outside a liquor store and defendant drove up and stopped in front of the store. The defendant got out of the car, walked toward Richard S., shot Richard S. in the ankle, walked away from Richard S., and drove away. The People argued the evidence was admissible under Evidence Code sections 1101 and 1103. Defendant brought a motion in limine to exclude references to criminal conduct that did not form the basis for the charges at issue in this action.

Over three hearings, the trial court considered whether to allow the admission of the evidence and, if it did admit it, for what purposes the evidence could be considered. The People argued the facts showed there was more than one crucial point of similarity between the two incidents that would satisfy the similarity requirements for the admission of prior-uncharged-crimes evidence. The People reasoned, "both of them corroborate together to show the intent of the defendant" was not to provide self-defense, but to assault Carlos, Jr.

The defense argued that the analysis would be different if assault were a specific intent crime, but that assault is a general intent crime—where the requisite level of intent is willfulness. The defense noted that, "[b]asically doing the action is the intent. And so I don't think it's an issue that's really disputed here." The defense argued the prior-

4

incident evidence appeared "to be propensity evidence until and unless the victim's character for violence is presented by the defense, then the door would be open." The defense then noted that the court would also need to perform an Evidence Code section 352 analysis to determine if the evidence could come in, and it argued including the evidence would be like having a trial within a trial, with its own civilian witnesses, photographs, evidence, law enforcement witnesses and videos. The defense characterized this as being an undue use of time and confusing to the jurors.

The People countered that whether defendant acted in self-defense was going to be a defense raised at trial, which would put all elements in dispute absent a stipulation of the parties. The People argued they would carry the burden to prove defendant did not act in self-defense when he shot at Carlos, Jr. and the jury's decision whether defendant acted in self-defense would depend on defendant's intent at the moment he shot towards Carlos, Jr. After reviewing the parties' arguments, reports from the prior incident, the preliminary hearing transcript, and the law, the trial court observed that "certainly the [surveillance] video in this case is going to be shown." The court concluded that "because the video is being played, the argument from video is going to be potentially either self-defense and/or accident, lack of intent. [¶] Based on that, the Court is going to allow the prior case from 2016 to come in. That's under an [Evidence Code section] 1101(b) theory, under a[n Evidence Code section] 352 analysis. . . . I do find that it is similar enough certainly for intent. And certainly this is general intent, which I understand and I understand that argument, but intent . . . needs [the] least amount of similarity. I do find there is sufficient similarities. [¶] Also I do find under a[n Evidence Code section] 352 analysis that this evidence would be probative and it would not be cumulative, and that the probative value does outweigh any substantial prejudice that would be involved. Also, the jury will be specifically instructed" with the "specific instruction for the [Evidence Code section] 1101(b), it is a limiting instruction, which will assist the jury in knowing that they're not to use it simply as propensity evidence."

5

At a later pretrial hearing, defense counsel sought clarification on how the 2016 Richard S. shooting evidence could be used at trial. The court clarified the evidence was admissible on the question of intent, in addition to lack of mistake or lack of accident.

<u>Defendant's</u> <u>Pretrial</u> <u>Efforts</u> <u>to</u> <u>Enter</u> <u>Evidence</u> <u>that</u> <u>the</u> <u>People</u> <u>Dismissed</u> <u>Assault</u> <u>Charges</u> <u>Stemming</u> <u>from</u> <u>the</u> <u>2016</u> <u>Richard</u> <u>S.</u> <u>Shooting</u>

After the trial court ruled that evidence of the 2016 Richard S. shooting was admissible, defense counsel asked the court to request defendant's file from the resulting case. Defense counsel stated the file reflected the district attorney had dismissed an assault charge in that case, and defendant had pleaded guilty to a Penal Code section 29800 violation, being a felon in possession of a firearm. The defense argued that when the evidence of the 2016 Richard S. shooting came in, evidence that defendant had not been convicted of assault as a result of that shooting would be relevant. The defense cited to *People v. Mullens* (2004) 119 Cal.App.4th 648 (*Mullens*), and argued *Mullens* stands for the proposition that when a court admits evidence of a prior uncharged act and there was an acquittal in an action stemming from that act, the acquittal evidence needs to come in. Defense counsel reasoned that though the situation with the 2016 Richard S. evidence was not exactly the same as an acquittal, it was similar.

The People pointed out that an acquittal is different than a negotiated resolution.

The court agreed to look at *Mullens* and to request the file from the 2016 Richard S. case. The court stated it and the parties could revisit the issue later, and the court asked the parties not bring the issue up in their opening statements.

Trial began on July 23, 2020. Before it started, defense counsel again raised the issue of the dismissal of assault charges stemming from the Richard S. incident. Defense counsel said, "the 2016 shooting is coming into evidence, and I cited the *Mullens* case. And I think it is fair that if evidence of the shooting comes in, evidence of the fact that the [Penal Code] section 245(a)(2) was dismissed and [defendant] was convicted of

6

[Penal Code section] 29800 is relevant and admissible, and you had reserved on that. So I think this would be a good time to take that up." The court responded that it had not yet read *Mullens*. Defense counsel then said he was planning to give his opening statement at the start of trial—"now"—and would like to be able to get into that issue then.

The court stated that it had previously considered the *Mullens* case and recalled that *Mullens* deals with a scenario in which the People had sought to bring in a prior Evidence Code section 1108 incident, where that evidence had resulted in an acquittal in the prior case. It noted that was not the same as the 2016 Richard S. case, which was a plea case. The court said it still wanted to look at "this case" more and requested the parties not reference the resolution in the 2016 Richard S. matter, because "[a]t this point preliminarily it doesn't look like this is going to apply, but let me continue to do research while the case is going on."

Defense counsel maintained that even if *Mullens* was not exactly on point, the 2016 Richard S. result was "an acquittal." "We have a negotiated plea." Defense counsel argued that on policy grounds it would be fair to let in the complete record from the 2016 Richard S. matter. The defense did not raise this issue again until after closing arguments.

### Admitted Evidence Relating to the 2016 Richard S. Shooting

At trial, the People called Richard S. He claimed to remember nothing about July 1, 2016, or ever being shot. He also claimed to remember nothing about the preliminary hearing in the criminal case brought after defendant allegedly shot him. He claimed not to recall whether images the defense showed him of swastika tattoos were from his body, or to recall if he had any tattoos.

The People then requested that portions of a 2016 preliminary hearing transcript of Richard S. testifying be read into evidence. The court allowed the transcript to come in

7

with some items redacted—e.g., matters to which objections were sustained. The court reporter read the transcript aloud.

At the 2016 preliminary hearing Richard S. testified that he and defendant had been friends for about two years. According to Richard S., on July 1, 2016, he had just arrived at a liquor store on his motorcycle, and he saw a car defendant was in pull in behind him. Defendant exited the passenger side of a car and came up behind him. Richard S. walked around the corner to another liquor store, and defendant followed Richard S. and was trying to talk to him, continuing into the second liquor store. Defendant said something to Richard S. to the effect of, " '[w]hat happened? I thought we were friends.' " Richard S. did not respond. Defendant and Richard S. had been in a physical fight about two weeks before, and they had not seen or heard from each other since the fight. Richard S. returned some items and left the store, and defendant followed him, still talking, remaining within a couple feet of Richard S. Richard S. got to his motorcycle and put the key in. Defendant continued talking to Richard S., and Richard S. told defendant to get away from him and knock it off. Richard S. was getting frustrated and angry. Richard S. thought maybe if he rushed at defendant, defendant would stop talking and go away, but his fists were not balled up, he did not make any sort of gestures towards his own waistband, and he did not have any weapons with him. When Richard S. walked toward defendant, defendant pulled a gun from his waistband, aimed at Richard S., and shot the gun when Richard S. was maybe five to seven feet away. In the time between when defendant aimed the gun at Richard S. and the time defendant fired the gun, Richard S. had turned to walk away. Richard S. felt a tug on the skin of his upper right ankle. Richard S. tried to walk, but fell down, and defendant walked up behind Richard S. and put the gun in Richard S.'s back. Defendant said, " 'I could kill you. You know that?' " Defendant then jumped in the car and left. Richard S. crawled into the first liquor store, and had the clerk call 911. He was taken to the hospital, where

8

he had surgery to treat his injury. Richard S. was in a wheelchair at the time of the 2016 preliminary hearing due to the injury he sustained when defendant shot him.

According to Richard S., in their prior fight, he had "socked" defendant a couple times. He had not hit defendant in the eye, but acknowledged it was possible he gave him a fat lip.

Richard S. testified that he had been a Skinhead for maybe 15 or 20 years. He had "kind of aged out." His active involvement had ended maybe 10 or 15 years before the 2016 incident. He was pretty sure defendant knew about his prior involvement with the Skinheads.

The defense had photographs of Richard S.'s tattoos entered into evidence. The tattoos covered Richard S.'s arms, calves, chest, and neck. The tattoos included a large swastika incorporated into a design on Richard S.'s left bicep, small swastikas in part of a tattoo on one of his wrists, and the word "SKIN" tattooed in large letters down one calf and "HEAD" tattooed in large letters down the other calf.

Closing Arguments and Jury Instructions

The People referred to the evidence regarding the 2016 incident during their closing argument. The prosecutor said, "Mr. S[.] also provided circumstantial evidence. Mr. S[.]'s prior testimony that was read in about when he was shot came into evidence, and that's something that you can consider. [¶] Now, we're not here to decide whether or not the defendant shot Mr. S[.] four years ago. We're still only talking about [Carlos, Jr.'s] case. But Mr. S[.]'s testimony provides circumstantial evidence into the mind of the defendant. It provides circumstantial evidence to explain the defendant's past experience and actions to show us what—whether he intended to shoot [Carlos, Jr.] and what he knew at the time. [¶] It's a lens that we are allowed to use to look into the mind of the defendant."

9

When discussing the level of intent that was required to prove the assault with a firearm charge, the People noted one element the jury needed to find was that defendant "did the act willfully. [¶] Now, he does not have to intend for the bullet to go into [Carlos, Jr.'s] arm. He does not have to pick a target and go [']that's what I'm intending to do.['] [¶] What he has to have an intention to do is to pull the trigger in [Carlos, Jr.'s] direction, which is exactly what he did. [¶] Now how do we know the mind of the defendant? [¶] There's circumstantial evidence. And I told you Mr. S[.]'s testimony is circumstantial evidence of what the defendant is thinking. It gives us a lens to look into his mind. And what we find is that with Mr. S[.], he got into—the defendant got into an argument with him. And when he got into an argument with him, he was trying to be friends with him. Mr. S[.] was done with that, trying to get away from him. He was—he was done. And so when Mr. S[.] starts to rush towards the defendant, the defendant pulls out his gun, pulled the trigger, and shot Mr. S[.] [¶] Here we are again. [¶] [Carlos, Jr.] is moving toward the defendant. [¶] Now, I wouldn't say he's rushing him, but he aggressively steps towards him. And the defendant pulls out his gun and again shoots downward. [¶] The defendant . . . makes no mistakes here. He's intending to pull that trigger. He's intending . . . for that force to be applied in [Carlos, Jr.'s] direction. It worked for him before, so he's trying it again. We don't have to rely on that alone though. [¶] He also points the gun at [Carlos, Jr.] waiting to shoot at him. And finally he tells the deputies that he did it to scare [Carlos, Jr.]. There's no accident if there's a reason for doing it. So if he has a reason, then he did the act willfully."

The People again brought up the Richard S. incident when it reviewed with the jury the need for it to find that "defendant did not act in self-defense." As part of its discussion on the issue of self-defense, the People argued, "[a] reasonable person would not have shot at someone that slapped him. A reasonable person would not have shot someone they knew even if they're aggressively walking towards them. But the defendant is not a reasonable person and we know that because he has previously shot

10

someone before after engaging in a fistfight.  [¶]  He shot Mr. S[.] when they had been in a fistfight a few weeks earlier.  He found him at the liquor store and begged to be his friend again.  And then he shot him.  [¶]  Why did he feel the need to shoot someone that—why did he feel the need to become someone's friend and then shoot them?  [¶] Two years later, he gets in a fight with a friend's son.  The friend's son slaps him.  When he gets slapped, he does not even act.  Why?  Because he's not in fear.  He does not have a reason to be.  [¶]  The defendant engages until he wants out and then he shoots.  He brings a gun to a fistfight and this is not reasonable."

The court instructed the jury with CALCRIM No. 303 regarding the general use of evidence admitted for a limited purpose.  According to the instruction, "[d]uring the trial, certain evidence was admitted for a limited purpose.  You may consider that evidence only for that purpose and for no other."  The court added that, with respect to the Richard S. testimony that had been read to the jury, the jury was required to "evaluate this testimony by the same standard that you apply to any other witness who testified here in court."

The court also instructed the jury with CALCRIM No. 375, which states, "[t]he People presented evidence that the defendant committed another offense that was not charged in this case.  [¶]  You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the offense. . . . A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.  [¶]  If the People have not met this burden, you must disregard this evidence entirely.  [¶]  If you decide that the defendant committed the offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether:  [¶]  The defendant acted with the intent required for the charged offenses in this case, or the defendant knew his actions would result in the application of force, or the defendant's alleged actions were not the result of mistake or accident.  [¶] Do not consider this evidence for any other purpose except for the limited purpose stated

11

above.  [¶]  Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.  [¶]  If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of the charged offenses.  The people must still prove every charge and allegation [beyond a reasonable doubt].”

Defendant’s Post-Closing Renewed Efforts to Introduce Evidence Regarding the Plea Bargain in the Richard S. Matter

After closing arguments, the reading of jury instructions, and when the jury had already begun their deliberations, the defense reraised the question of admitting evidence of the 2016 plea bargain.  The court’s recollection of the prior discussions was that it had “denied the request but left it open for additional case law.”  The court observed that there are a number of cases that indicate it would be an error if the court did not allow in that a defendant had been acquitted of charges from a prior incident admitted under Evidence Code section 1101, but “that’s not the situation we have here.”  The court noted the situation here involved defendant and the People negotiating a plea, where defendant pleaded to being a felon in possession of a firearm, and the district attorney then dismissed the assault charges.  Though the court said it understood the defense’s position, it denied the request.

Jury Verdict, Motion for New Trial, and Sentencing

In addition to finding defendant guilty of committing assault with a firearm in violation of Penal Code section 245, subdivision (a)(2), the jury found it to be true that in committing the assault, defendant personally used a firearm as contemplated by section 12022.5, subdivision (a), and inflicted great bodily injury as contemplated by section 12022.7, subdivision (a).  The jury also found defendant guilty of being a felon who had

12

been in possession of a firearm on the date of the assault in violation of section 29800, subdivision (a)(1).

After the jury reached its verdict, defendant brought a motion for a new trial. In the motion, defendant argued (1) that under Evidence Code sections 1101 and 352, the trial court had erred in allowing the admission of evidence that defendant had shot Richard S. in 2016, and (2) that the trial court erred in not allowing the defense to introduce evidence that the charge of assault with a firearm that stemmed from the 2016 shooting of Richard S. had been dismissed. The trial court denied the motion.

The trial court sentenced defendant to a total term of 10 years 8 months. Defendant filed a timely notice of appeal.

DISCUSSION

I

*Admission of Evidence of the 2016 Richard S. Incident*

Defendant argues that the trial court abused its discretion in admitting evidence of defendant shooting Richard S. in 2016. Defendant argues that the evidence lacked sufficient similarity to be admissible under Evidence Code section 1101, subdivision (b), to prove intent and lack of mistake. Defendant also argues the trial court ought to have excluded the evidence pursuant to Evidence Code section 352, because it was cumulative on the question of intent, lacked substantial probative value on the issue of intent and lack of mistake, and its inherent prejudicial impact was exacerbated in the way it was used in closing argument to the jury.

A.      Underlying Principles and Standards of Review

Evidence Code section 1101 governs the admissibility of uncharged crimes. Evidence Code section 1101, subdivision (a), generally prohibits the admission of "evidence of a person's character or a trait of his or her character," including in the form

13

of "specific instances of his or her conduct," when that evidence is "offered to prove his or her conduct on a specified occasion." "The provision 'expressly prohibits the use of an uncharged offense if the *only* theory of relevance is that the accused has a propensity (or disposition) to commit the crime charged and that this propensity is circumstantial proof that the accused behaved accordingly on the occasion of the charged offense.' (*People v. Thompson* (1980) 27 Cal.3d 303, 316.)" (*People v. Chhoun* (2021) 11 Cal.5th 1, 25, italics added (*Chhoun*).)

However, Evidence Code section 1101, subdivision (b), states that this limitation does not prohibit, "the admission of evidence that a person committed a crime . . . when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake *or* accident . . . ." (Italics added, see also *Chhoun*, *supra*, 11 Cal.5th at p. 25 [" 'If an uncharged act is relevant to prove some fact other than propensity,' such as the perpetrator's intent or identity, or the existence of a common plan, 'the evidence is admissible, subject to a limiting instruction upon request.' (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 406)"].)

" 'Evidence of uncharged crimes is admissible to prove identity, common plan, and intent "only if the charged and uncharged crimes are sufficiently similar to support a rational inference" on these issues.' (*People v. Edwards* (2013) 57 Cal.4th 658, 711 (*Edwards*).) The degree of similarity varies depending on the purpose for which the evidence is offered. 'The least degree of similarity . . . is required in order to prove intent.' ([*People v. ]Ewoldt*[ (1994)] 7 Cal.4th [380], 402[ (*Ewoldt*)].)" (*Chhoun*, *supra*, 11 Cal.5th at p. 25.) " ' " 'By contrast, a higher degree of similarity is required to prove common design or plan, and the highest degree of similarity is required to prove identity.' " ' (*People v. Erskine* (2019) 7 Cal.5th 279, 295.)" (*People v. Scully* (2021) 11 Cal.5th 542, 586 (*Scully*).)

When "evidence of the uncharged conduct is sufficiently similar to the charged crimes to be relevant for a nonpropensity purpose, the trial court must" also determine

14

"the evidence's probative value is 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury' " under Evidence Code section 352. (*Chhoun*, *supra*, 11 Cal.5th at p. 26.)

"Thus, the admissibility of uncharged crimes depends upon three factors:  (1) the materiality of the facts sought to be proved; (2) the tendency of the uncharged crimes to prove or disprove the material fact (i.e., probative value); and (3) the existence of any rule or policy requiring the exclusion of relevant evidence (i.e., prejudicial effect or other [Evidence Code section] 352 concern)." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 238 (*Hendrix*).)

We review a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352 for an abuse of discretion. (*People v. Johnson* (2022) 12 Cal.5th 544, 610 (*Johnson*).)  Under this standard, " '[t]he court's ruling will not be disturbed unless made "in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' ([*People v. ]Powell*[ (2018)] 6 Cal.5th [136], 162.)" (*Johnson*, at p. 611.)

### B.    <u>Material</u> <u>Purpose</u> <u>and</u> <u>Probative</u> <u>Value</u>

"In order to satisfy the requirement of materiality, the fact sought to be proved or disproved must be either an ultimate fact or an intermediate fact from which such ultimate fact may be inferred.  [Citation.]  Elements of the offense and defenses are ultimate facts.  [Citation.]" (*Hendrix*, *supra*, 214 Cal.App.4th at p. 239.)  Here, the trial court allowed the evidence from the 2016 incident to come "in for [defendant's] intent, lack of mistake, lack of accident."

The criminal intent required to commit assault with a deadly weapon "is the general intent to willfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another. . . .  The intent to cause

any particular injury (*People v. Carmen*[ (1951)] 36 Cal.2d 768, 776), to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary." (*People v. Rocha* (1971) 3 Cal.3d 893, 899.) However, as the trial court noted in explaining why it allowed the Richard S. evidence in, given the video footage of the shooting in this case, "the argument from video [was] going to be potentially either self-defense and/or accident, lack of intent." The Richard S. evidence served the material purpose of negating that defendant acted in self-defense—i.e., to show he did not act with the intent of protecting himself from imminent danger—because " 'the recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' [Citation.]" (*Ewoldt, supra,* 7 Cal.4th at p. 402.)

In terms of assessing the probative value of prior-uncharged-acts evidence, "[t]he least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] . . . In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' " (*Ewoldt, supra,* 7 Cal.4th at p. 402; see also *Chhoun*, *supra*, 11 Cal.5th at p. 25.)

Defendant argues that the 2016 Richard S. incident and the shooting at issue here lack sufficient similarity to allow the inclusion of the Richard S. evidence. We do not agree. Though there are some differences between the two incidents—it appears that defendant initiated the confrontation with Richard S. that resulted in the shooting where the victim appears to have started the confrontation here; Carlos, Jr. slapped defendant seconds before the shot while Richard S. punched defendant a couple weeks earlier—the similarities between the two incidents are significant. In both instances defendant shot at someone who had been violent with him. When defendant fired shots at the victims, both victims were moving towards defendant, and the victims were not throwing punches or

brandishing weapons.  In both instances the shot was aimed low, suggesting a reckless attempt to scare the victim by firing a shot in their direction that was not aimed at vital organs.

"[T]he similarities between the prior and charged offenses 'provided a sufficient basis for the jury to conclude that defendant[] acted with the same criminal intent or motive, rather than by " 'accident or inadvertence or self-defense or good faith or other innocent mental state.' " ' [Citation.]" (*Scully*, *supra*, 11 Cal.5th at p. 587.)  The evidence suggests that in both instances defendant wanted to scare the victim and show he was willing and able to shoot a gun at the victim.

C.     Evidence Code Section 352 Analysis

Defendant argues that the Richard S. evidence should have been excluded under Evidence Code section 352.  First, defendant argues the evidence was cumulative because defendant admitted to the police that he had fired a gun at Carlos, Jr., greatly diminishing the value of the prior event evidence as a means of demonstrating he willingly shot towards Carlos, Jr.  Second, he argues that, particularly in light of the purported diminished probative value of the prior event evidence, the prior event evidence was inflammatory and highly prejudicial.  He suggests that the way the People used the 2016 Richard S. evidence in their closing argument heightened its prejudicial effect.

Pursuant to Evidence Code section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Defendant argues the Richard S. evidence was cumulative, because it was not needed to determine whether defendant shot the gun " 'willingly or on purpose[.]' " Though defendant may have admitted he shot at Carlos, Jr., and the surveillance videos may have shown defendant shot towards Carlos, Jr., whether he fired the shot in an act of

17

self-defense or for another reason was not beyond dispute.  And, therefore, evidence that defendant had previously shot toward the ground at someone with whom he had a dispute was not merely cumulative.  (See *Chhoun, supra,* 11 Cal.5th at p. 29.)

The evidence was also not unduly prejudicial.  " ' " [E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.  In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.' " ' (*People v. Powell* (2018) 6 Cal.5th 136, 162–163.)" (*Johnson, supra,* 12 Cal.5th at p. 610.) "Evidence is not unduly prejudicial 'merely because it strongly implicates a defendant and casts him or her in a bad light.' (*People v. Robinson* (2005) 37 Cal.4th 592, 632.)" (*People v. Lindberg* (2008) 45 Cal.4th 1, 50.)

Here, the Richard S. evidence was not so prejudicial as to require its exclusion. Admittedly, Richard S.'s injuries were worse than Carlos, Jr.'s, and his violent actions towards defendant at the time defendant shot him were more remote in time than Carlos, Jr.'s violent actions toward defendant when defendant shot Carlos, Jr.  However, Carlos, Jr. slapped defendant once and does not appear to have caused any visible injuries, while Richard S. had admitted to hitting defendant a couple times and possibly giving him a "fat lip."  Likewise, though Carlos, Jr. may have had a reputation for violence, Richard S. was an admitted former Skinhead with swastika tattoos and a Skinhead tattoo prominently displayed on his body.  Here, when defendant shot the gun, Carlos, Jr. was walking in defendant's direction and yelling, but did not appear to be moving at a pace where he looked like he was going to grab or punch defendant immediately.  In contrast, though Richard S. described his movement towards defendant as walking, he also described it as making a rushing action towards defendant.

18

Finally, to the extent the Richard S. evidence may have had a prejudicial impact, the court minimized it by instructing the jury with CALCRIM Nos. 303 and 375, which together limited the jury's application of the Richard S. evidence to its consideration of the question of whether defendant acted with requisite intent and knowledge to be found guilty of committing assault and without mistake or accident. The court specifically instructed the jury to not conclude with the evidence that defendant has a specific character or is disposed to commit crime. " 'We presume the jury understood and followed the instruction.' (*People v. Homick* (2012) 55 Cal.4th 816, 873.)" (*People v. Sanchez* (2019) 7 Cal.5th 14, 55.) Similarly, in using the 2016 Richard S. evidence in its closing argument, the People framed its discussion of that evidence around how it might be used to inform an understanding of defendant's intent and a lack of self-defense when defendant shot at Carlos, Jr.

In his reply, defendant suggests the admission of the Richard S. evidence was rendered more prejudicial by the fact that Richard S. did not relay the story to the jury. Instead, preliminary hearing testimony was read in by the clerk, preventing the jury from assessing Richard S.'s appearance and giving the story a "false aura of reliability." But this ignores that Richard S. did, in fact, appear before the jury. He simply refused to admit to remembering anything about the 2016 incident or even if he had tattoos. Additionally, Richard S.'s prior involvement with the Skinheads was acknowledged in the testimony read by the clerk, and the jury saw photos of his tattoos. While a clerk may have been the one reading from the 2016 transcript, the jury was aware that the words being read had come out of Richard S.'s mouth, and it was given ample opportunity to form an impression that Richard S. might not be a terribly reliable, consistent, or sympathetic witness.

The trial court did not abuse its discretion when it admitted evidence of the 2016 Richard S. incident.

19

II

*Exclusion of Record of Dismissal of 2016 Assault Charge*

Defendant argues that the trial court erred in excluding evidence that in 2016 the prosecutor dismissed the assault charge against him that arose from the Richard S. incident as part of a plea bargain. Defendant reasons that a rule established in *People v. Griffin* (1967) 66 Cal.2d 459 (*Griffin*) required the trial court to include the dismissal evidence here. Defendant further argues that the error violated his due process rights to a fair trial, and that the error was prejudicial, necessitating a reversal of his conviction. The People counter by suggesting the cases defendant cites to are inapplicable, arguing there was no due process violation, and by characterizing any potential error as harmless. We find that the rule established by *Griffin* does not require the admission of evidence that a charge that was part of prior conduct admitted under Evidence Code section 1101, subdivision (b) was dismissed as part of a plea bargain.

In *Griffin, supra,* 66 Cal.2d at page 464, defendant was convicted of first degree murder after a woman he had allegedly raped died from the wounds he had inflicted on her during the attack. (See *id.* at pp. 461, 463.) At trial, the court allowed the prosecutor to present evidence that defendant had committed rape under similar circumstances in Mexico shortly after the incident for which he was on trial. (*Id.* at pp. 463-464.) The trial court did not allow in evidence that the defendant had been acquitted of the alleged Mexico rape in a Mexican court. (*Id.* at p. 465.) The state's high court found the trial court erred "in excluding evidence on the issue of guilt that defendant was acquitted of the subsequent crime by a Mexican court. . . . [T]he better rule allows proof of an acquittal to weaken and rebut the prosecution's evidence of the other crime." (*Id.* at p. 465.) The state's high court reasoned, "[r]egardless of its probative value, evidence of other crimes always involves the risk of serious prejudice, and it is therefore always 'to be received with "extreme caution." ' (*People v. Albertson*, 23 Cal.2d 550, 577.) Indeed,

for this very reason some courts have concluded that an acquittal so attenuates the weight that may properly be given evidence of another crime as to require the exclusion of such evidence altogether. (See *People v. Ulrich*, 30 Ill.2d 94, 101; *State v. Little*, 87 Ariz. 295, 307.) Our rule does not go that far, but instead is fair to both the prosecution and the defense by assisting the jury in its assessment of the significance of the evidence of another crime with the knowledge that at another time and place a duly constituted tribunal charged with the very issue of determining defendant's guilt or innocence of the other crime concluded that he was not guilty." (*Id.* at p. 466.)

In *Mullens, supra,* 119 Cal.App.4th at pages 664-665, in extending the *Griffin* rule to apply to evidence of an acquittal when prior-incident evidence is admitted to show propensity in sexual crimes under Evidence Code section 1108, the Fourth District Court of Appeal noted that, "*Griffin*, *supra*, 66 Cal.2d 459, and its progeny . . . stand for the proposition (hereafter the *Griffin* rule) that if a trial court permits the prosecution to present evidence that the defendant committed one or more similar offenses for which he or she is not charged in the current prosecution, the trial court must also allow the defense to present evidence of the defendant's acquittal, if any, of such crimes, and failure to allow such acquittal evidence constitutes error."

The People correctly distinguish the instant case from *Griffin* and *Mullens* by pointing out that the dismissal of the Richard S. assault charge as part of a plea bargain does not have the same import as an acquittal, because, unlike an acquittal, the agreed upon dismissal is not a judicial determination regarding the truth or falsity of the earlier charge. (See *People v. Heishman* (1988) 45 Cal.3d 147, 193 [finding that for purposes of Pen. Code, § 190.3, "a dismissal not based on any judicial determination with respect to the truth or falsity of the charge is not an acquittal"]; *Mosier v. Department of Motor Vehicles* (1993) 18 Cal.App.4th 420, 422 & 425 [finding a dismissal of Veh. Code, § 23152, subd. (b), charges pursuant to a plea bargain was not a resolution of those

21

charges on the merits which would require the DMV to restore an alleged drunk driver's license to him under Veh. Code, § 13353.2, subd. (e)].)

Defendant argues that, despite the fact that a plea bargain is not an acquittal, *People v. Jenkins* (1970) 3 Cal.App.3d 529 (*Jenkins*) demonstrates the *Griffin* rule should be extended to apply here. In *Jenkins*, at pages 531 and 533, a defendant was found guilty of possession of a completed check with intent to defraud after a trial in which evidence that his codefendant had been arrested in a similar transaction had been admitted for the sole purpose of demonstrating his codefendant's intent. Defendant argued the trial court committed prejudicial error in blocking his efforts to show that his codefendant had never been charged with a similar offense following the prior arrest. Defendant reasoned that the error was prejudicial because "he and [his] codefendant . . . were so closely associated that in the minds of jurors incriminating evidence as to one defendant was harmful to the other." (*Id.* at p. 534.) The appellate court agreed that excluding the evidence had been error, because, though it did not have the same force as an acquittal, "any competent or otherwise admissible evidence tending to weaken and rebut the evidence of the other crime should be admissible." (*Ibid.*)

A decision not to charge a potential defendant with a crime following an arrest is distinguishable from a dismissal of a charge pursuant to a negotiated plea. In the first instance, a district attorney never charges the potential defendant with a crime suggesting, perhaps, that the evidence supporting that crime was weak or nonexistent. In the second instance, charges are brought and, in securing a dismissal, the defendant agrees to accept responsibility for some degree of wrongdoing—i.e., in order to secure the dismissal, the defendant has to agree to be treated as though he is not wholly innocent of criminal conduct. With a dismissal of some charges pursuant to a plea deal, the defendant only avoids full punishment on the dismissed charges in exchange for his plea. The dismissal does not speak to his guilt or innocence of the charged crime.

22

The possible reasons a district attorney may have for accepting a negotiated plea in exchange for dismissing some charges are numerous, and those reasons may have little or nothing to do with the strength of the available evidence or the actual innocence of the defendant.  As a result, evidence that a prior charge was dismissed as part of a negotiated plea of no contest to a different offense does not actually "weaken or rebut" the evidence of prior conduct considered pursuant to Evidence Code section 1101, subdivision (b).

The trial court made no error in excluding evidence that assault charges from the Richard S. incident were dismissed as part of a negotiated plea.

III

*No Cumulative Error*

Defendant argues that the admission of evidence of the 2016 Richard S. shooting coupled with the exclusion of evidence that the assault charge stemming from the Richard S. shooting was dismissed created a cumulative error denying him of his due process rights.  Because we find no error in parts I and II we find no cumulative error.

DISPOSITION

We affirm the trial court's judgment.

                                                   _____

                                                   HULL, Acting P. J.

We concur:

_____

MAURO, J.

_____

HOCH, J.